| | |
|---|---|
| TIMOTHY S. MENES<br><br>   *Plaintiff*,<br><br>  v.<br><br>CHUBB & SON (A DIVISION OF FEDERAL INSURANCE COMPANY) and METROPOLITAN LIFE INSURANCE COMPANY,<br><br>   *Defendants*. | Civil Action No.  3:13-cv-02094-PGS-DEA<br><br>**MEMORANDUM AND ORDER** |

   This matter comes before the court on defendant, Metropolitan Life Insurance Company's motion for summary judgment [ECF No. 14] and plaintiff's cross-motion for summary judgment [ECF No. 15].  Plaintiff, Timothy S. Menes, has asserted claims for relief under 29 U.S.C. §1132(a)(1)(B). For the reasons set forth below, defendant's motion for summary judgment will be GRANTED and plaintiff's cross-motion for summary judgment will be DENIED.

   Plaintiff Timothy S. Menes ("Menes" or "Plaintiff") is an individual seeking long term disability benefits under the terms of Defendant, Chubb & Son's ("Chubb") long term disability plan. Menes was employed with Chubb as a Senior Program Analyst and had been working from home for three years prior to filing for LTD benefits in 2011. The plan is an employee welfare benefit as defined by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1132(a)(1)(B). Chubb is the policyholder, plan sponsor and plan administrator of the employee welfare benefit plan providing disability benefits. Defendant Metropolitan Life Insurance Company ("Metlife" or "Defendant"), is the claim administrator, therefore acting as claims fiduciary for the plan. The plan is in part administered by the State of New Jersey.

   Menes's health issues resulted from an incident occurred on November 24, 1999, when he fell off a ladder. According to the notes provided by Menes's primary doctor, Dr. Prentice, the

1

condition began in 2008 and worsened as time went by. In 2010, Menes had multiple surgeries in an attempt to alleviate lower back, neck and shoulder pain. Yet, even after the surgeries, he continued to suffer pain from a degenerative disc disease, intervertebral foraminal narrowing, and spinal stenosis. In attempt to accommodate Menes, Chubb allowed him to work from home for three years prior to the disability request filed in 2011.

Menes submitted his initial claim for benefit on February 16, 2011, stating that he was disabled from his job as Senior Program Analyst because he was unable to stand, walk and move due to his injury. Additionally, he was unable to concentrate because he was taking large doses of morphine. Menes's job description was provided by Chubb to Metlife and consisted of the following:

> 95% sitting
> 5% standing
> 0% lifting, driving, carrying and pushing
> 50%-80% verbal communication
> 50%-100% contact with internal customers
> High concentration level required
> Are responsible for providing leadership and guidance to more junior members of project team

(See ECF No. 14, Exhibit C, ML1013). Menes qualified for the disability benefits because he was disabled "due to sickness or as a direct result of accidental injury" and he was receiving "appropriate Care and Treatment and complying with the requirements of such treatment." Additionally "he was unable to earn more than 80% of his predictable earnings at his own occupation from any employer in his local economy." (See ECF No. 14, Exhibit C, ML1012-13). For these reasons, in 2011, Chubb, through their insurance company administrator MetLife, granted Plaintiff a short term disability. MetLife subsequently requested medical records from Menes in order to ascertain his medical condition. MetLife received office visit reports and CT scans that they ultimately found to be inconclusive. Since the results were inconclusive, MetLife

sought and obtained a surveillance of Menes's activities from days between May and June 2011. Menes testified and supported with Dr. Prentice's notes that he was unable to move for extended periods of time, and that he was unable to operate machinery under medications. Nevertheless, he was witnessed engaging in the following activities: walking, standing, shopping, bending, squatting, pushing a cart, driving, picking up and carrying branches, operating a weed whacker, riding a lawn mower, wearing and using a leaf blower backpack etc. These activities were found to be inconsistent with the representations provided by Menes and his primary doctor. On April 2011, MetLife advised Menes that his short term benefit were going to expire and allowed him to apply for long term benefits. In this application Menes mentioned that he had some good days and some bad ones, that he could drive for about 15 minutes before experiencing pain and that he was having issues with his memory due to the medication he was taking. Menes also stated that he was no longer able to work from home because was experiencing memory issues due to the medications he was taking.[1] Menes further mentioned that some of the activities he was witnessed engaging in were unavoidable because he had to take care of his family.

At that time Menes advised Metlife that he had no surgeries planned and that the only doctor he was seeing was Dr. Prentice, his general practitioner. Dr. Prentice provided his opinion by stating that Menes could sit, walk, and stand for one hour per day and that his attention span was limited and accompanied by memory and cognitive issues. However, according to routine office notations taken by Dr. Prentice, Menes cognitive functions appeared to be intact and appropriate through his treatment. Upon later inquiries from MetLife, Dr. Prentice informed MetLife that Menes was engaging in physical activities against his recommendations.

---

[1] In his cross-motion for summary judgment, plaintiff mentioned a letter sent to Betty Sears, an employee at MetLife where he stated that prior to working from home he had been falling asleep on the job and had to use an assistant to be able to communicate with clients.

Pursuant to the recommendations provided by Dr. Prentice, MetLife extended the benefits by approving the LTD request in 2011. Nevertheless, they obtained further surveillance of Menes during October 2011. Again Menes was shown engaging in prolonged physical activities (i.e. driving for 2 hours with intermittent stops, shopping and carrying bags). He was also observed picking up clay targets from a skeet shooting area and carrying them to his car and sifting through dirt to retrieve spent bullets for two days in a row. Upon gathering this information, MetLife sent the surveillance to Dr. Prentice and in response received a letter from Menes attempting to explain his activities. MetLife subsequently referred Menes to their own doctor, Dr. Monokofsky, who found numerous inconsistencies in the case. Specifically, Dr. Monokofsky found that the record was not specific enough as to past surgeries and consultations with Menes's clinic and surgeon in Florida (plaintiff argues that part of the records from Menes's surgeries in Florida was lost, or however unavailable to MetLife). He further stated that the surveillance video was inconsistent with the impairment as documented by Dr. Prentice. Due to the specific nature of the injury, Dr. Monokofsky recommended review of the records by a specialist. Accordingly, on January 2012, MetLife submitted the record to Dr. Marion, a board certified doctor in physical medicine, rehabilitation, and pain medicine. Dr. Marion found no objective impairment to support any specific occupational restrictions.[2] He was also asked to comment on the effects of the medications that Menes was taking, finding that, though narcotics may cause cognitive deficits, there was no specific evidence of cognitive deficits in the records. Dr. Marion attempted to contact Dr. Prentice to discuss the file, but he was unable to reach him. Upon forwarding the record to Dr. Prentice, Dr. Marion received a note stating that Menes was still unable to perform the duties required by his employment and recommended that he see a neurosurgeon.

---

[2] Plaintiff claims that MetLife's record is incomplete and specifically is missing records from Gulf Coast Orthopedic from 2010 (170pgs).

On February 16, 2012 a request was made for a vocational review as to whether Menes was indeed able to perform his occupational duties. The meeting was conducted by a Unit Leader, a Registered Nurse and the claims manager at MetLife. They all agreed that there was no need for a neurosurgeon to visit Menes because the surveillance videos showed that he was functional. MetLife administrators also reviewed the file determining that the medical record no longer supported the impairment claimed by Menes.

Plaintiff claims that MetLife referred Menes to an Advocator Group to seek Social Security Disability Insurance benefits. Defendant agreed with this statement asserting that they advised Menes that he could obtain assistance in applying for Social Security benefits from an Advocator Group. Applying for Social Security was required by the Plan offered by Chubb. The Plan provides, "if there is a reasonable basis for You to apply for benefits under Federal Social Security Act, We expect You to apply for them…" Menes applied for Social Security benefits and was denied at first. However, on July 23, 2012, he was found eligible for Social Security Disability benefits beginning from May 2012.

MetLife terminated the LTD as of March 26, 2012. On appeal, Manes was denied based on the administrative record which included numerous medical reviews, vocational interviews and multiple dates of surveillance that contradicted Menes's claims. Furthermore, the basis of the appeal contradicted representations made by Menes in the past, stating that his position at Chubb was that of Executive Technology Support Administrator and not Senior Program Analyst and this job could not be performed remotely. Menes stopped providing records after March 26, 2012. Menes's file was reviewed by a nurse consultant as part of the appeal process. The records were further reviewed by Dr. Kaplan, a specialist in rehabilitation and pain management. Though Dr. Kaplan recognized that Menes's condition caused some restrictions (i.e. lifting more than 5-10

lb.), none of them coincided with duties to be performed as part of Menes's job. Dr. Kaplan also concluded that there was no documented clinical evidence to support cognitive restrictions caused by medication side effects. Dr. Kaplan attempted to contact Dr. Prentice but was unable to reach him. The records from the review were sent to Dr. Prentice but no response was received. As a result of this process, the appeal was denied.

Plaintiff filed a complaint on April 3, 2013, seeking compensation and claiming that MetLife's termination of benefits was arbitrary and capricious, constituted a breach of the Plan, and was an abuse of discretion. The complaint was followed by an answer provided by Defendant on May 9, 2013. Cross-Motions for summary judgment pursuant to Rule 56(c) were filed by the parties on January 10, 2014.

## DISCUSSION

### I.     Legal Standard - Fed. R. Civ. P. 56(c)

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor "that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x 222, 227 (3d Cir. 2007).

## II. Arbitrary and Capricious Standard of Review under ERISA, 29 U.S.C. §1132(a)(1)(B).

Pursuant to ERISA, "a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). An ERISA regulated plan confers to the plan administrator discretion to interpret the terms of the plan to determine eligibility. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). Claims brought under §1132 of ERISA are subject to the arbitrary and capricious standard of review. *Bruch*, 489 U.S. at 111. A plan administrator's decision will be deemed arbitrary and capricious "if it is 'without reason, unsupported by substantial evidence or erroneous as a matter

7

of law.'" *Miller v. Am. Airlines, Inc.,* 632 F.3d 837, 845 (3d Cir. 2011) (citing *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993)). Evidence is substantial when "there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000). The scope of this review is narrow. *McCann v. Unum Provident*, No. 11-3241, 2013 WL 1145422, at *11 (D.N.J. Mar. 18, 2013). The court reviews only for abuse of discretion and may not substitute its judgment for that of the plan administrators. *Id*. In that sense, the court "sits more as an appellate tribunal than as a trial court." *Id.* at *10. Under this standard, the decision of the administrator "will be overturned only if it is 'clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.'" *Maciejczak v. Procter & Gamble Co.*, 246 Fed. App'x 130, 131 (3d Cir. 2007). In applying the arbitrary and capricious standard, plaintiff carries the burden of demonstrating that he qualifies for the benefits requested and that the administrator's decision was arbitrary and capricious. *Connor v. Sedgwick Claims Mgmt. Servs., Inc.,* 796 F. Supp. 2d 568, 580 (D.N.J. 2011).

MetLife decided to terminate the benefits after they failed to receive additional records and in view of the second set of surveillance videos from October 2011, where Menes was observed engaging in physical activity that contradicted his disability claims. In reaching this decision, MetLife relied on the evaluation provided by several medical practitioners and independent consultant who reached a consensus that was only contradicted by the claims of Menes' primary doctor, Dr. Prentice. Contrary to Plaintiff's argument, the plan administrators' reliance on the opinion of their own consultants does not constitute arbitrary and capricious behavior. "ERISA does not grant preferential treatment to the opinion of a treating physician, nor does it require a

8

heightened burden of proof for the administrator if he rejects the treating doctor's opinion." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831 (2003).

The facts in this matter contradict Menes's claims. He was observed engaging in physical activities that according to Dr. Prentice were not possible due to Menes's medical condition (i.e. yard work or recreational activities at a shooting range). Although Dr. Kaplan, the practitioner who most recently reviewed the record, mentioned that Menes medical condition may limit him in certain physical activities, none of them would affect Menes's ability to perform his job as Senior Program Analyst. The surveillance videos provided in October 2011, further support Dr. Kaplan's findings by showing that the limitations claimed were inconsistent with Menes's actual ability to perform activities and therefore proved that his functionality exceeded the requirements of his occupation making him ineligible for LTD. According to the arbitrary and capricious standard, this court is not reviewing MetLife's decision for accuracy but simply to evaluate whether they provided sufficient support. Conclusively, MetLife has provided sufficient support to substantiate the decision.

Plaintiff attempts to argue that Defendant has failed to provide evidence on Menes's inability to perform the essential duties of his own occupation due to side effects of medications. This type of argument fails to consider that the burden of proof is on Plaintiff to demonstrate that the Defendant's decision was indeed arbitrary and capricious. For this reason, the claim is irrelevant to this analysis.

For the above stated reasons, Menes is unable to meet the arbitrary and capricious standard that would grant continuation of benefits under the Plan offered by Chubb.

### III. Menes Qualification for Disability Benefits Pursuant to the Plan's Definition

According to the Plan provided by Chubb, to qualify for benefits the patient must be: (a) receiving Appropriate Care and Treatment and complying with the requirements of such treatment (b) is unable to earn (1) "more than 80% of your Predisability Earnings from any employer in Your Local Economy from any employer in your local economy" (2) After such period, more than 80% of your Predisability Earnings from any employer in your local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education and experience." [ECF No. 14, Exhibit A, ML1040].

MetLife stated that the decision to terminate the benefit was based on Menes' failure to provide records in support to his condition. The medical professionals that reviewed Plaintiff's medical records unanimously concluded that Menes claimed restrictions and limitations were not medically supported and were inconsistent with his observed activities. In fact, his observed activities evidenced functionality that exceeded the requirements of his occupation. Additionally, at the time Menes requested continuation of benefits, he was only receiving treatment from his general practitioner, Hugh Prentice, M.D. Arguably, this may not meet the requirement of "appropriate care and treatment" provided by the Plan. Furthermore, MetLife was not provided with medical evidence documenting cognitive impairment and/or mental status exam findings supporting impairment from March 2012 forward. Accordingly, they determined that given the medical documentation provided the condition did not prevent Menes from earning more than 80% of his predisability income at his occupation from his employer. Based on these parameters, Menes no longer met the employer's Plan definition of disability at the time MetLife's decision was made.

### III. Objective Evidence

In his opposition, Plaintiff raised an argument as to Menes's inability to provide objective evidence of his cognitive impairment. Providing objective evidence of a condition that cannot be proven objectively may constitute a hurdle to Plaintiff's ability to prove his case. *See generally Mitchell v. Eastman Kodak*, 113 F.3d 433 (3rd Cir. 1992). Menes provided the industry standard for side effects of the medication he was taking, however even Dr. Prentice mentioned in his notations that Menes's cognitive function appeared intact. Additionally, MetLife has clarified that the decision to deny benefits was based on Menes's failure to provide updated evidence of his condition altogether, rather than on absence of objective evidence.

### IV. Conflict of Interest

Pursuant to the Supreme Court decision in *Bruch*, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Bruch*, 489 U.S. at 115. (Internal quotations omitted). However, a potential conflict of interest "should prove less important where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators, from those interest in firm finances, or by imposing management checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits." *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2351 (2008).

Plaintiff argues that because MetLife determines eligibility for and pays for long term disability benefits, a conflict of interest exists. MetLife adopts a system that allows each claim to be reviewed on its own merits and each claim determination to be based solely upon the information in the claimant's file and the terms of the plan. Additionally, in an attempt to maintain neutrality, the financial and claim offices are geographically separated. MetLife specialists do not receive compensation or any other incentives from denying claims. They review each claim

11

consistently, regardless of whether the Plan is funded by an employee (as in this case) or by MetLife. The possibility for a conflict of interest appears to have been properly handled by the Defendant, and therefore does not weigh in favor of Plaintiff in this analysis.

### V. Social Security Decision

Plaintiff argues that MetLife failed to properly consider the Social Security Disability decision when evaluating the record. "An award of social security disability benefits by the SSA 'may be considered as a factor in evaluating whether a plan administrator has acted arbitrarily and capriciously in reviewing a Plaintiff's claim.'" *Connor*, 796 F. Supp. 2d at 584-85 (citing *Marciniak v. Prudential Fin. Ins. Co. of Am.,* 184 Fed. App'x 266, 269 (3d Cir. 2006)). However, "an award of SSD benefits does not in itself establish that an administrator's decision was arbitrary and capricious." *Id*. (internal citation omitted). This is because the legal principles controlling the Social Security analysis differ from those considered in an ERISA analysis. *Id*.

Although the Social Security analysis is not binding, the decision is to be considered when the plan administrator: "(1) encourages the applicant to apply for SSD payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary and capricious." *Connor,* 796 F. Supp. 2d at 585 (internal citation omitted).

Plaintiff mentioned in his statement of facts that MetLife encouraged him to apply for social security benefits; however, Defendant stated that they advised him to seek advice from an Advocator Group as part of the Plan's requirements. Furthermore, while MetLife's claim determination was based upon the entirety of the administrative record, the Social Security administration did not consider the surveillance videos and the opinion of other physicians in

making its decision but instead just relied on the underlying medical recommendations and reported functional restrictions provided by Dr. Prentice. For these reasons, and according to the above mentioned standard, the Social Security benefits determination does not contribute to the arbitrary and capricious determination in this matter.

For the aforementioned reason, Defendant's motion for summary judgment is be GRANTED and Plaintiff's cross-motion is be DENIED.

### ORDER

This matter comes before the court on defendant, Metropolitan Life Insurance Company's motion for summary judgment [ECF No. 14] and plaintiff's cross-motion for summary judgment [ECF No. 15]. For the reasons set forth above,

IT IS on this 23RD day of April, 2015;

ORDERED that Defendant's motion for Summary Judgment shall be, and hereby is, granted with prejudice. (ECF No. 14); and it is further

ORDERED Plaintiff's cross-motion for Summary Judgment shall be, and hereby is denied. ECF No. 15).

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.